**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01734-MDB

LUCAS ERNESTO CASTILLO MARTINEZ,

Applicant,

v.

JUAN BALTAZAR, Director of Detention Center,
GEROGE VALDEZ[1], Director of Local Office, and
TODD LYONS, ICE Director,

Respondents.

---

**ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS**

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) filed *pro se* by Applicant Lucas Enresto Castillo Martinez. Mr. Martinez is detained by United States Immigration and Customs Enforcement ("ICE") at a detention center in Aurora, Colorado. He seeks immediate release or a bond hearing at which the Government bears the burden of proof because his detention has become unconstitutionally prolonged in violation of his due process rights. (*Id.* at 2-5).

The Court must construe the Application and other papers filed by Mr. Martinez liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S.

[1] Pursuant to Fed. R. Civ. P. 25(d), George Valdez, Field Office Director of the Aurora Field Office of Enforcement and Removal Operations, U.S. Immigrations and Customs Enforcement, is automatically substituted as a respondent for Robert Guadian.

519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See* Hall, 935 F.2d at 1110. For the following reasons, the Court will deny the Application.

**I. BACKGROUND**

Mr. Martinez is a native and citizen of Venezuela. (ECF No. 15-1). On December 14, 2015, he was admitted to the United States with authorization to remain in the United States for a temporary six-month period, but he remained in the United States beyond his authorized period. (*Id.*).

On April 30, 2025, Mr. Martinez pled *no lo contendere* (no contest) to possession of cocaine and grand theft in Florida. (*Id.* at 4; ECF No. 15-2).

On August 7, 2025, ICE took Mr. Martinez into custody. (ECF No. 15-2). On August 28, 2025, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Mr. Martinez as removable from the United States under Section 237(a)(1)(B) and Section 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA") because of his drug conviction and his unlawful immigration status. (ECF No. 15-1).

On November 4, 2025, Mr. Martinez appeared before an immigration judge for a custody redetermination hearing. (ECF No. 15-2). The immigration judge found that Mr. Martinez was ineligible for release on bond based on his no contest plea to possession of cocaine, which it considered a conviction of a controlled substance for purposes of the INA.[2] (*Id.*).

[2] *See Batrez Gradiz v. Gonzales,* 490 F.3d 1206, 1207-09 (10th Cir. 2007) (finding that plea of *no lo contendere* by the noncitizen was conviction under INA).

On May 4, 2026, a different immigration judge ordered Mr. Martinez removed to Venezuela. (ECF No. 15-3). Mr. Martinez filed an appeal with the Board of Immigration Appeals ("BIA"), which remains pending. *See* United States Department of Justice Executive Office for Immigration Review (EIOR) Automated Case Information at https://acis.eoir.justice.gov/en/.

During this time, Mr. Martinez initiated this federal habeas corpus action on April 23, 2026. (*See* ECF No. 1). Respondents were ordered to show cause why the Application should not be granted. (*See* ECF No. 3). Respondents filed a Response on May 27, 2026. (*See* ECF No. 15). On July 9, 2026, Mr. Martinez submitted a "Notice of Changed Circumstances, Supplemental Information, and Request for Judicial Notice" and on July 20, 2026, he filed a "Supplemental Memorandum in Support of [His] Petition for Writ of Habeas Corpus" (ECF No. 18), which the Court liberally construes together as Mr. Martinez's Reply to Respondents' Response.

## II. ANALYSIS

The Court has jurisdiction under 28 U.S.C. § 2241 to consider Mr. Martinez's constitutional claim. *See Demore v. Kim*, 538 U.S. 510, 517 (2003).

### A. Detention Under § 1226(c)

In general, detention of noncitizens within the United States is governed by 8 U.S.C. § 1226 and 8 U.S.C. § 1231. Section 1226 grants authority to detain a noncitizen prior to entry of a final order of removal and § 1231 authorizes detention during the period that commences after entry of a final order of removal. The removal period under § 1231 begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

As noted above, the appeal remains pending with the BIA and Mr. Martinez does not yet have a final order of removal. Thus, he remains in custody pursuant to § 1226 until he becomes subject to a final order of removal.

Section 1226(a) generally grants the Attorney General discretion to arrest and detain a noncitizen pending a decision on whether the noncitizen should be removed. Additionally, Section 1226(c) *requires* detention of certain noncitizens who have committed certain crimes. *See* 18 U.S.C. § 1226(c) (describing categories of criminal offenses for which "[t]he Attorney General shall take custody any alien"). Congress added the "mandatory detention" category under Section 1226(c) because it believed that "releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight" and continued opportunities for noncitizens "to engage in crime." *Demore v. Kim,* 538 U.S. 510, 513-14, 520 (2003).

Mr. Martinez does not dispute that he was convicted of a qualifying crime and that his detention is mandatory under § 1226(c). *See Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) ("We hold that § 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes."). Because Mr. Martinez is

being detained pursuant to § 1226(c), he does not have a statutory right to a bond hearing or a custody redetermination hearing. *See Jennings*, 138 S. Ct. at 846, 850-51 (rejecting arguments that § 1226(c) should be interpreted to include an implicit 6-month time limit on the length of mandatory detention and that noncitizens detained under § 1226(c) must be given periodic bond hearings). *See also Olmos v. Holder*, 780 F.3d 1313, 1324 (10th Cir. 2015) (finding that noncitizen detained pursuant to Section 1226(c) is not entitled to a bond hearing).

However, while the Supreme Court held in *Jennings* that § 1226(c), on its face, does not require bond hearings every six months, the Supreme Court did not address the question of whether prolonged detention without a bond hearing violates the due process clause. 138 S. Ct. at 847-48, 851.

**B. Due Process Analysis**

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523 (internal quotation marks omitted). It is equally clear that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. The question before the Court is whether Mr. Martinez's ongoing detention has become constitutionally unreasonable such that he is entitled to an additional bond hearing as a matter of due process.

Several federal appellate courts have concluded that, at some point, prolonged detention under § 1226(c) without a bond hearing violates the Due Process Clause of the Fifth Amendment. *See, e.g., German Santos v. Warden Pike County Correctional*

*Facility,* 965 F.3d 203, 209 (3rd Cir. 2020) (holding that individuals detained under § 1226(c) may bring as-applied challenges to their detention based on its duration); *Reid v. Donelan,* 17 F.4th 1, 7 (1st Cir. 2021) ("[W]e adhere to the notion that the Due Process Clause imposes some form of reasonableness limitation upon the duration of detention[.]" (internal quotation marks omitted)).

The Tenth Circuit has yet to rule on this issue, but courts in this District have concluded that they are not precluded from ordering an individualized bond hearing under § 1226(c). For example, a court in this District explained:

> In *Demore*, the Supreme Court considered the constitutionality of a six-month period of mandatory detention pursuant to Section 1226(c). Though Respondents are correct that the Court in *Demore* found no constitutional violation, they remove the Court's holding from its factual context. The *Demore* Court's holding that Section 1226(c) permissibly imposes mandatory detention for the "brief period necessary for . . . removal proceedings," 538 U.S. at 513, 523, is rooted in the reality that, at that period in time, mandatory detentions were brief:
>
>> in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter. . . . In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal.
>
> *Id.* at 529-30 (citations omitted). Moreover, Justice Kennedy's concurrence reinforced that a short duration of detention was dispositive of the majority's holding. He reasoned that because "the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable

> or unjustified." *Demore*, 538 U.S. at 532 (Kennedy, J., concurring). Accordingly, this Court agrees with the District of Minnesota and numerous of other federal district courts in concluding that "*Demore* expressed the understanding that detention under § 1226(c) would be brief, and this assumption was 'key to [the Court's] conclusion that the law complied with due process.'" *Muse v. Sessions*, 409 F. Supp.3d 707, 716 (D. Minn. 2018) (citation omitted).

*Villaescusa-Rios v. Choate*, 2021 WL 269766 (D. Colo. Jan. 27, 2021) (footnote omitted, brackets in original). The court then "applied a multi-factor balancing test to evaluate whether mandatory detention without an individualized bond hearing ha[d] become unconstitutionally prolonged" for a petitioner who had been detained without a hearing for 30 months. *Id.* at *3. Ultimately, the court found that "[o]n balance, the … factors weigh[ed] heavily in favor of Petitioner," and required an individualized bond hearing. *Id.* at *5; *but see Aguayo v. Martinez,* 2020 WL 2395638 (D. Colo. May 12, 2020) (Domenico, J.) (rejecting petitioner's due process claim finding that "detention under Section 1226(c) is constitutional because it is necessarily limited—it ends at the conclusion of removal proceedings," and "lower courts' should not "graft 'some arbitrary time limit' onto pre-removal detention under Section 1226(c)").

Respondents acknowledge that courts in this District apply this six-factor test, (ECF No. 15 at 9-10), and here the Court does the same. The factors are:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Villaescusa-Rios*, 2021 WL 269766 at *3.

***(1) Total Length of Detention to Date***

Courts in this District have found that a period of 20 months is prolonged enough to weigh in petitioner's favor. *See, e.g., Singh v. Choate*, 2019 WL 3943960 (D. Colo. Aug. 21, 2019) (ordering individualized bond hearing where detention lasted over 20 months), *appeal dismissed*, 2020 WL 2028502 (10th Cir. Jan. 22, 2020). There are also out-of-District cases finding that fourteen months is too prolonged. *See, e.g., Muse v. Sessions,* 409 F. Supp.3d 707, 716 (D. Minn. 2018) (finding that detention for over fourteen months weighed in favor of petitioner); *Portillo v. Hott,* 322 F. Supp. 3d 698, 707 (E.D. Va. 2018) (same).

By contrast here, Mr. Martinez was detained on August 7, 2025, received a custody redetermination hearing on November 4, 2025, and remains in custody at the detention facility in Aurora, Colorado. Though this is not a brief period, it is not the 20 or 14 months from other cases. Moreover, Mr. Martinez was afforded a custody redetermination/bond hearing approximately nine months ago. Accordingly, the Court finds this factor does not weigh in Mr. Martinez's favor. *See generally Singh v. Albarran*, 2026 WL 381557, at *2 (E.D. Cal. Feb. 11, 2026) (petitioner detained for about nine months under § 1226(c) was not entitled to relief where "some of that delay [was] due to his requests for continuances and asylum application," and he had been afforded custody determination hearing outset of his detention); *Salazargarza v. Semaia*, 2025 WL 3165160, at *6 (C.D. Cal. Oct. 3, 2025) (private interest of petitioner detained for over two years under § 1226(c) was "not entitled to strong weight due to the process Petitioner received during his confinement," including a bond hearing eighteen months earlier, "and the fact that he contributed to the delays by challenging his removal order"

before the BIA and Ninth Circuit), *report and recommendation adopted*, 2025 WL 3162330 (C.D. Cal. Nov. 12, 2025).

***(2) Likely Duration of Future Detention***

In analyzing the second factor, the Court must consider "how long the detention will likely continue in the absence of judicial relief." *Villaescusa-Rios*, 2021 WL 269766 at *3.

Here, the BIA appeal was initiated relatively recently, in May 2026. *See* United States Department of Justice Executive Office for Immigration Review (EIOR) Automated Case Information at https://acis.eoir.justice.gov/en/. The Court cannot know when this appeal will be resolved and therefore does not weigh this factor for or against Mr. Martinez.

***(3) Conditions of Detention***

"In analyzing this factor, courts consider whether 'the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention.'" *Villaescusa-Rios*, 2021 WL 269766 at *4 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018)). "'The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing.'" *Id.* (quoting *Muse*, 409 F. Supp.3d at 717). Courts in this District have found that the conditions of confinement at the Aurora facility are more akin to incarceration than civil confinement. *See, e.g., Daley,* 2023 WL 2336052, at *4 (noting that the Aurora facility has a history of violating medical standards, resulting in the deaths of some detainees, as well as violating ICE's own

detention standards, and that detainees are denied outside recreation, are required to wear government issued clothing, are deprived of contact visits with their loved ones, and are subject to daily violence and threats while detained). Accordingly, the Court weighs in Mr. Martinez's favor.

***(4) and (5) Delays in the Removal Proceedings Caused by the Detainee and the Government***

Neither party has demonstrated that any delays in the removal proceedings were caused by the other party. There is no suggestion that the Government engaged in misconduct or acted in bath faith in the removal proceedings. And the duration of the appeal has not yet become unreasonable. Accordingly, the Court finds that the fourth and fifth factors do not weigh for or against Mr. Martinez.

***(6) Likelihood that the Removal Proceedings will Result in a Final Order of Removal***

Mr. Martinez's removal proceedings could ultimately result in an order of removal based on the immigration judge's finding that removal was appropriate. (*See* ECF No. 15-3). Moreover, Mr. Martinez has not offered any evidence or made any argument that persuades this Court that he is likely to prevail on appeal. Accordingly, the Court finds this factor does not weigh in his favor.

**III. CONCLUSION**

With the third factor weighing in favor of Mr. Martinez, but the first and sixth factors weighing against him, the balance of factors weighs against a finding for Mr. Martinez. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2241 (ECF No. 1) is **DENIED**. It is further

**ORDERED** that the case is closed.

DATED August 3, 2026.

**BY THE COURT:**

______________________

Maritza Dominguez Braswell
United States Magistrate Judge